**In re Nolan R. TINNIN, Carol L. Tinnin, Debtors.**

**Bankruptcy No. 83–01124(1).**

United States Bankruptcy Court, E.D. Missouri, E.D.

March 30, 1984.

Richard Alan Cooper, St. Louis, Mo., for debtors.

Paul J. Harris, St. Ann, Mo., for claimant.

## MEMORANDUM OPINION

ROBERT E. BRAUER, Bankruptcy Judge.

In this Chapter 13 case, the Debtors have objected to Claim No. 4, filed as a secured claim by Citizens National Bank of Greater St. Louis, for $186,295.35 "plus accrued interest." The Proof of Claim, dated August 1, 1983, and filed on August 22, 1983, reflects a principal amount owing of $148,728.81, and $37,566.53 in interest charged through August 1, 1983. The Debtors object that the amount claimed is excessive.

The Claim is based on a promissory note executed by the Debtors on December 15, 1980, secured by a first Deed of Trust, of the same date, on two parcels of residential real estate located in St. Louis County, Missouri. The promissory note reads as follows:

> On demand, if no demand, one (1) year after date we promise to pay to the order of CITIZENS NATIONAL BANK OF GREATER ST. LOUIS One hundred Forty-Seven Thousand Eight hundred Seventy-Two and 81/100 Dollars, for value received, negotiable and payable without defalcation or discount, and with interest from maturity at the highest rate allowed by law.

The principal amount of $147,872.81 includes a two-point origination fee of $2516, one year's interest of $19,520.28 and various loan disbursements totalling $125,836.53. According to the Federal Reserve Regulation Z disclosure statement, signed by the Debtors, the first year of interest was calculated at a rate of 17.51%. The two point origination fee was treated as interest for purposes of this calculation. Since the note matured, on December 15, 1981, Citizens has calculated the accruing interest at a

rate of 17%, and its claim 4 embraces interest at such rate. The Debtors charge that the post-maturity interest rate is excessive.

The note provides for post-maturity interest "at the highest rate allowed by law." The parties disagree as to the meaning of this phrase. Citizens claims in its Memorandum that this phrase "refers to the highest interest rate which a bank may charge or what is commonly referred to as the usery (sic) rate." Citizens attached to its Memorandum an affidavit of the Missouri Commissioner of Finance, in which the Commissioner states that the general state usury rate (the "market rate" as per MO. REV.STAT. § 408.030) in effect on December 15, 1980, the date of the note, was 13.5%. On December 15, 1981, the state usury rate was 16.6%. The rate fluctuated during 1982 and 1983 between a high of 16.6% and a low of 13.2%. At no time since December 15, 1980, has the rate risen to 17.51% or even 17%. Citizens does not attempt to explain, why, if it intended to rely on the state usury rate as "the highest rate allowed by law," at all pertinent times it charged a rate in excess of the state maximum.

The Debtor argues that this loan is governed by the Depository Institutions Deregulation and Monetary Control Act of 1980 (Act), Pub.L. No. 96–221, § 501, 94 Stat. 132, 161 (found at 12 U.S.C. § 1735f–7 note (1980)) which preempts state usury laws limiting the rate of interest on certain federally-related, residential real estate loans made after March 31, 1980. On qualifying loans all usury limits are abolished by the Act, and the parties are free to agree on any rate of interest. If there is no maximum limit on the interest rate which may be charged, then the phrase "highest rate allowed by law" is meaningless. If so, the parties then, have not in effect established a rate to be applied after the note has matured. The rate of interest on which the parties may agree is infinite and cannot be determined from the provisions of the note. Therefore, so the Debtors argue, the issue then becomes what rate of interest will be applied when the parties have failed to provide for a rate in their agreement. The Debtors urge that MO.REV.STAT. § 408.-020 be applied. It provides that "creditors shall be allowed to receive interest at the rate of nine percent per annum, *when no other rate is agreed upon,* for all moneys after they become due and payable ..." (emphasis added).

I find the Debtors' argument persuasive. The loan transaction appears to be covered by § 501(a) of the Act; and, the State of Missouri has not opted out of this federal statutory provision, as it may have done under § 501(b)(2) of the Act. Therefore, at the time this note was executed and at the time it matured, there was no cap on the rate of interest which could be charged on this type of loan. The "highest rate allowed by law" was whatever rate the parties decided it should be, and the parties did not fix such a rate in their loan agreement. Because the parties have failed to agree upon the rate of interest to be applied after maturity, the legal rate of nine percent will be applied, as per MO.REV.STAT. § 408.-020.

This holding is in accord with *Centurian Corp. v. Cripps,* 624 P.2d 706 (Utah 1981), in which parties to a lease purchase agreement contracted for interest at the "highest rate allowed by law," although none of the state's usury laws covered the subject loan transaction. In construing the parties' intent regarding the interest rate, the Utah Supreme Court stated:

> The law specifically disclaims any maximum interest amount, pointing out that parties to agreements such as that here under consideration, "may contract for the payment by the debtor of any loan finance charge." Inasmuch as the parties did not so contract, the trial court was justified in referring to the legal interest rate currently established by Utah law: six percent per annum.

*Id.* at 711. In this instance the legal rate of nine percent per annum shall be applied. Claim No. 4 will be allowed in the amount of $124,690.71 principal and $3,578.41 in interest calculated through April 15, 1984. See exhibit A.

. . . .

Claimant filed, on October 26, 1983, its Second Proof of Claim, Claim No. 7, which

**914**

is identical to Claim 4, except that Claim 7 includes Attorneys Fees and Deposition Costs of $1,882.50. Debtors did not put into issue the fees and costs addition by their Objection to Claim 4; and neither party called this Court's attention to Claim 7 during the hearing on the Objections to Claim 4. And Claimant did not offer evidence concerning the fees and costs.

Since the fees and costs addition was not litigated, the order being entered on Claim 4 is without prejudice to Debtors' opposing the requested addition. Debtors are to file appropriate objections thereto by April 13, 1984, if objections are to be filed. If such objections are not filed, the fees and costs addition will be allowed as part of Claimant's secured claim.

### EXHIBIT A

| | |
|---|---|
| Principal Amount of Loan | $125,836.53 |
| Loan Origination Fee | 2,516.00 |
| Interest from 12/15/80–12/15/81 | 19,520.28 |
| Insurance Premium | 856.00 |
| Interest from 12/16/81–12/19/83 @ 9% per annum on principal of $126,692.53 | 22,929.61 |
| LESS: Payments made by Debtors between 3/8/82 and 3/10/83 | (3,500.00) |
| Sale of Meramec Station Road property, 12/19/83 | (43,467.71) |
| Total Due as of 12/19/83 | $124,690.71 |
| Interest from 12/20/83–4/15/84 @ 9% per annum on principal of $124,690.71 | 3,587.41 |
| Total Due as of 4/15/84 | $128,278.12 |